## NO. 24-4211

In The

# United States Court Of Appeals
## For The Fourth Circuit

# UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

# RICHARD ALEXANDER MURDAUGH,

*Defendant - Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AT BEAUFORT**

——————————

## APPELLANT'S RESPONSE TO MOTION TO DISMISS

——————————

**James M. Griffin
Margaret N. Fox
GRIFFIN HUMPHRIES, LLC
4408 Forest Drive
Suite 300 (29206)
P. O. Box 999
Columbia, SC  29202
(803) 744-0800**

*Counsel for Appellant*

Appellant Alex Murdaugh's appeal must not be dismissed. Although Murdaugh entered into a plea agreement with a limited appeal waiver, his current appeal asserting that the district court violated his Eighth Amendment right by sentencing him to a *de facto* life sentence without conducting a proportionality review is outside the scope of the limited appeal waiver.

## I.     BACKGROUND

Appellant Richard Alexander Murdaugh (Murdaugh) was once a prominent attorney in South Carolina who was charged, tried, and convicted of the murder of his wife and son, following a six-week nationally televised trial watched by millions. (JA238). One trade publication reports that the Murdaugh trial set a Court TV record with 4.8 million hours of viewing. Court TV Gets Big Bounce from Alex Murdaugh Verdict, NextTV, (https://www.nexttv.com/news/court-tv-gets-big-bounce-from-alex-murdaugh-verdict. Prior to being charged with murder on July 20, 2022, the State of South Carolina had previously arrested Murdaugh on October 16, 2021, for financial crimes relating to his theft of client settlement proceeds and firm fees. (JA233-238). During the murder trial, the State was permitted to introduce evidence of Murdaugh's financial crimes as proof of motive - namely that Murdaugh allegedly murdered his wife and son to distract from an impending financial investigation by his law firm. Murdaugh received two life sentences for the murder convictions. His appeal of these murder convictions is pending before the South Carolina appellate courts.

Following his murder convictions, on November 23, 2023, Murdaugh pled guilty and was sentenced to 27 years in South Carolina state court for financial crimes. *Id.* Murdaugh is not eligible for parole on this sentence and is required to serve 85% before being released, assuming his murder convictions are overturned on appeal. (JA96-97). On April 1, 2024, Murdaugh was sentenced to 40 years in prison by United States District Court Judge Richard S. Gergel after previously pleading guilty to twenty-two (22) federal crimes. These twenty-two (22) counts of financial crimes arise from the same criminal conduct for which Murdaugh pled guilty in South Carolina state court. Judge Gergel ordered that the 40-year federal sentence run concurrently with the 27-year state sentence for financial crimes.

During the federal sentencing hearing, the prosecutor conceded that the federal charges were brought, in part, to provide a backstop to the murder convictions. (JA162) ("*We always intended to charge him for the federal financial crimes and hold him fully accountable, but really with the goal of providing a backstop, that, should anything fall through with those murder convictions, we would have charged him and held him accountable within our statute of limitations.*") (emphasis added). Moreover, the prosecutor argued for an upward variance from the sentencing guideline range of 210 to 262 months, although the government never filed a formal variance motion. The government admitted that Murdaugh has taken full accountability for his conduct in the financial fraud scheme. However, the

government did not believe that Murdaugh assisted with detailing the potential involvement of others, or the location of assets. (JA164). The government requested Judge Gergel impose a 30-year concurrent sentence (JA165) which, as the government expressly stated, represents a "death sentence" for the 55-year-old Murdaugh. (JA166).

Judge Gergel imposed an even greater variance from the guidelines and sentenced Murdaugh to 40 years in prison. At the hearing and in the court's Judgment, Judge Gergel recited the sentencing factors found in 18 U.S.C. § 3553(a) that supported the court's decision to impose a sentence of 40 years. (JA174-177). However, the district court did not engage in a proportionality review of the type described by the United States Supreme Court in *Solem v. Helm*, 463 U.S. 277, 290-292 (1983) ("There are three objective factors that Courts are to consider in determining whether a sentence violates the proportionality principle: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the same crime in other jurisdictions."). When discussing the unwarranted sentencing disparities, the district court acknowledged the sentencing guideline range of 210-262 months and that other defendants convicted of wire fraud with the same offense level and criminal history category as Murdaugh received a median sentence of 210 months, and an average sentence of 168 months. (JA176, JA258).

3

Nevertheless, the district court concluded that Murdaugh's conduct was more analogous to that of Bernie Madoff who received a sentence of 150 years. (JA177). Murdaugh's loss amount for sentencing guideline calculation was $10,901,547.32. (JA229). The loss amount used to calculate Madoff's sentencing guideline range was $13.26 billion. (Tr. p. 34).[1] Murdaugh's offense level was a Level 34 (JA252) while Madoff's offense level was 52 (Tr. p. 3). Murdaugh's guideline sentencing range was 210 to 262 months (JA252). Madoff's sentencing guideline range was life, but because none of the offenses carried a statutory maximum of life, the guidelines were calculated by stacking the maximum sentence for each count. As a result, Madoff's sentencing guideline range was 150 years. (Tr. p. 3-4). Judge Chin sentenced Madoff to 150 years, the sentence recommended under the advisory guidelines. Judge Gergel sentenced Murdaugh to 40 years, more than double the low end of the calculated guideline sentence, and more than double the average and median sentences for defendants with the same offense level and criminal history category.

The district court also ordered Murdaugh to pay restitution in the total amount of $8,762,731.88 allocated to the following payees: Murdaugh's former law firm ($4,544,730.15), an insurance company ($3,875,000), a bank ($329,913.27), and to a former client ($13,088.46). (JA183). With the exception of one former client, all

---

[1] The Transcript of Madoff's sentencing is located on the Department of Justice website at https://www.justice.gov/sites/default/files/usao-sdny/legacy/2012/04/16/062909sentencing.pdf

4

other client victims were made whole by Murdaugh's former law firm and through insurance proceeds. The district court also granted the government's motion for forfeiture in the amount of $10,034,377.95. (JA178).

The district court imposed the sentence and filed the Judgment on April 1, 2024. (JA136-178, JA179). Murdaugh timely filed his Notice of Appeal on April 15, 2024. (JA190). In this appeal, Murdaugh argues that the district court violated his Eighth Amendment right by sentencing him to a *de facto* life sentence without conducting a proportionality review.

## II.    MURDAUGH'S EIGHTH AMENDENT CHALLENGE IS NOT WITHIN THE SCOPE OF HIS LIMITED APPEAL WAIVER.

A defendant who agrees to a valid appellate waiver "does not subject himself to being sentenced entirely at the whim of the district court." *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992). Rather, a defendant "retains the right to obtain appellate review of his sentence on certain limited grounds." *United States v. Attar*, 38 F.3d 727, 732 (4th Cir. 1994). A defendant does not waive his right to appeal a sentence "where the sentencing court violated a fundamental constitutional or statutory right that was firmly established at the time of sentencing." *United States v. Archie*, 771 F.3d 217, 223 (4th Cir. 2014). Furthermore, this Court has rules that a defendant could not be said to have waived his right to appellate review of "illegal" sentences, that is sentences imposed in excess of the maximum penalty provided by statute, restitution orders that exceed the statutory authority, or sentences imposed

on a constitutionally impermissible factor such as race. *United States v. Cohen*, 459 F.3d 490, 497–98 (4th Cir. 2006).

Just as a sentence that exceeds the statutory maximum falls outside the scope of an appeal waiver, so must a sentence that is imposed in violation of the Eighth Amendment. Although the contours of an Eighth Amendment proportionality review are not clearly defined, the Fourth Circuit recognizes that a proportionality analysis is applicable to all criminal sentences, *United States v. Cobler*, 748 F.3d 570, 577 (4th Cir. 2014), and further directs that an extensive proportionality analysis must be conducted for life sentences without the possibility of parole. *United States v. Rhodes,* 779 F.2d 1019, 1028 (4th Cir. 1985). Moreover, in *United States v. Friend*, 2 F.4th 369, 378 (4th Cir. 2021), this Court acknowledged that "a court could impose a sentence that is so long as to equate to a life sentence without parole." *Id*.

The district court effectively sentenced Murdaugh to life in prison without the possibility of parole.  Before imposing the *de facto* life sentence, the district court was required to engage in a proportionality review under the Eighth Amendment but did not.  It is fundamentally unfair, and contrary to Fourth Circuit precedent, for the government to argue the limited waiver contained in Murdaugh's plea agreement requires this Court to turn a blind eye to the district court's violation of his Eighth Amendment right.  Accordingly, Murdaugh's appeal should not be dismissed and this Court should either remand this case back to the district court for a resentencing

with instructions to conduct a proportionality analysis, or alternatively, this Court should vacate Murdaugh's sentence, and find, based upon the existing record, that the sentence imposed by the district court is grossly disproportionate to the federal financial crimes for which Murdaugh was sentenced.

**III.  THE DISTRICT COURT VIOLATED APPELLANT'S EIGHTH AMENDMENT RIGHT BY SENTENCING THE 55-YEAR-OLD APPELLANT TO A *DE FACTO* LIFE SENTENCE WITHOUT CONDUCTING A PROPORTIONALITY REVIEW.**

A.      <u>Application of the Eighth Amendment to *De Facto* Life Sentences.</u>

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Supreme Court "has on occasion stated that the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *Rummel v. Estelle,* 445 U.S. 263, 271 (1980); *see also Solem v. Helm,* 463 U.S. 277, 284 (1983) ("The final clause [of the Eighth Amendment] prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed.").

In *Solem v. Helm,* the Supreme Court identified three "objective" factors for courts to consider in determining whether a sentence violates the proportionality principle: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the same crime in other jurisdictions. 463 U.S. at

290–92. By applying the three-part proportionality test, the Supreme Court upheld the Eighth Circuit's decision that a sentence of life imprisonment without possibility of parole violated the Eighth Amendment when applied to a nonviolent recidivist felon who was found guilty of the crime of writing a "no account" check for $100.00. *Id.* at 281–82.

Nearly a decade after the Supreme Court decided *Solem,* the applicability of the proportionality test was called into question by three seemingly conflicting opinions in *Harmelin v. Michigan*, 501 U.S. 957 (1991) (plurality). Joined by Chief Justice Rehnquist, Justice Scalia wrote, "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." *Id.* at 965, 111 S. Ct. 2680. He then determined that proportionality review is only appropriate in capital punishment cases. *Id.* at 994, 111 S. Ct. 2680.

However, Justice Kennedy, whose concurrence was joined by Justices O'Connor and Souter, wrote that though he concurred in the judgment and part of the Court's opinion, "*stare decisis* counsels [the Supreme Court's] adherence to the narrow proportionality principle that has existed in our Eighth Amendment jurisprudence for 80 years." 501 U.S. at 997 (Kennedy, J., concurring in part and concurring in judgment). Furthermore, he stated, "The Eighth Amendment proportionality principle also applies to noncapital sentences." *Id.* Justice Kennedy explained that the precise contours of the proportionality principle provided in the

8

Court's previous decisions were unclear, but the following common principles emerge: (i) the primacy of the legislature in determining appropriate punishment; (ii) the variety of legitimate penological schemes; (iii) the inevitably divergent theories of sentencing in our federal system; and (iv) the use of objective factors to inform proportionality review. *Id.* at 998–1001 (citations omitted). Ultimately, Justice Kennedy found, "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* (citing *Solem*, 463 U.S. at 288, 103 S. Ct. 3001).

The Supreme Court observed in *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003), that the law regarding proportionality review after *Harmelin* is not "a model of clarity." In *Ewing v. California*, 538 U.S. 11 (2003), three justices in the plurality approved of applying a proportionality principle in non-capital cases. The plurality purported to rely on Justice Kennedy's concurrence in *Harmelin* to "guide [it's] application of the Eighth Amendment." *Id.* at 23–24. However, rather than conduct the three-step test outlined in Justice Kennedy's *Harmelin* concurrence and in *Solem*, the plurality analyzed only the gravity of the defendant's trigger offense of shoplifting and his history of recidivism to determine that a sentence of twenty-five years to life imprisonment for a recidivist offender of California's three-strikes rule did not violate the Eighth Amendment. *Id.* at 28–30. Though concurring in the

9

judgment, Justices Scalia and Thomas believed that courts could not intelligently apply the proportionality principle. *Id.* at 31–32.

In a companion case to *Ewing*, the Supreme Court issued a five-to-four decision, holding that "[i]n applying [the gross disproportionality] principle for § 2254(d)(1) purposes, it was not an unreasonable application of ... clearly established law for the California Court of Appeal to affirm [the defendant's] sentence of two consecutive terms of 25 years to life in prison." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003). Although its review under § 2254(d)(1) prevented the Court from reaching the merits of the petitioner's Eighth Amendment claim, the Court provided the following dicta: "Through this thicket of Eighth Amendment jurisprudence, one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." *Id.* at 72 (citing § 2254(d)(1)). Thus, despite seemingly conflicting discussions in earlier cases that have not been overruled, it seems that after *Lockyer,* Supreme Court precedent dictates that the Eighth Amendment provides for proportionality review for terms of years, *United States v Wellman*, 716 F. Supp. 2d 447, 460 (S.D. W. Va. 2010).

In the Fourth Circuit, proportionality analysis of sentences, in the context of as-applied Eighth Amendment challenges, is available for all sentences. *United States v. Cobler*, 748 F.3d 570, 577 (4th Cir. 2014). However, "extensive

proportionality analyses" are only required in those cases involving life sentences without the possibility of parole. *United States v. Wellman*, 663 F.3d 224, 231 (4th Cir. 2011); *United States v. Rhodes*, 779 F.2d 1019, 1028 (4th Cir. 1985). In *United States v Wellman*, 716 F. Supp. 2d 447, 460 (S.D. W. Va. 2010), the district court ruled that a *de facto* life sentence was subject to the same extensive proportionality review applicable to life sentences without parole. Moreover, in *McKinley v. Butler*, 809 F.3d 908, 911 (7th Cir. 2016), the Seventh Circuit (Posner) ruled that there is no logical distinction between *de jure* life sentences and *de facto* life sentences. In *United States v. Friend*, 2 F.4th 369, 378 (4th Cir. 2021), this Court, citing *McKinley*, acknowledged that, while "lengthy sentences are not ipso facto life sentences…a court could impose a sentence that is so long as to equate to a life sentence without parole." *Id.*

    B.    <u>Murdaugh Received a *De Facto* Life Sentence without Parole.</u>

Here, Murdaugh was sentenced to 40 years in prison at the age of 55. With good time credit, he will be eligible for release after serving 85% of his sentence, or 34 years. However, his life expectancy is only 24.14 years according to the Social Security Life Expectancy Table.[2] As the government acknowledged at Murdaugh's sentencing hearing, even a sentence of 30 years is a death sentence.

---

[2] https://www.ssa.gov/oact/STATS/table4c6.html

The district court effectively sentenced Murdaugh to life in prison without the possibility of parole. Before imposing the *de facto* life sentence, the district court was required to engage in a proportionality review under the Eighth Amendment, whether an extensive review or a limited one. The district court did not conduct either in violation of Murdaugh's Eighth Amendment right, and thus, this appeal is properly before this Court.

**IV.    THE 40 YEAR SENTENCE IMPOSED BY THE DISTRICT COURT VIOLATES THE EIGHTH AMENDMENT BECAUSE IT IS GROSSLY DISPROPORTIONATE TO THE CRIMES COMMITTED BY THE 55-YEAR-OLD APPELLANT.**

The district court did not address the *Solem* factors: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the same crime in other jurisdictions. 463 U.S. at 290–92. Nor did it engage in any proportionality review whatsoever. When a district court fails to conduct a proportionality review under the Eighth Amendment, the appropriate relief is generally to remand the case to the district court for the necessary review. This approach ensures that the district court can develop an adequate factual record and make the necessary findings to support a proportionality analysis. *United States v. Bieri*, 21 F.3d 819, 825 (8th Cir. 1994). Furthermore, Murdaugh respectfully requests that, if remand is ordered for the purpose of conducting a proportionality analysis,

the case be reassigned to another judge, preferrable one from outside the District of

South Carolina. *See United States v. Nicholson*, 611 F.3d 191, 217 (4th Cir. 2010).[3]

The record before this Court establishes that Murdaugh's *de facto* life sentence

is grossly disproportionate to the crimes for which he pled guilty. Murdaugh diverted

more than $8 million from client settlement proceeds over a 15-year period. All the

client victims received a portion of their settlement proceeds and were unaware that

Murdaugh was skimming off the top. Murdaugh used these stolen funds to support

a severe opioid addiction. When he was confronted about missing fees by his law

firm, Murdaugh readily confessed to his misdeeds. The law firm and its insurer paid

these client victims in full.

Although the federal crimes were non-violent, Murdaugh's convictions for

murdering his wife and son cast a dark shadow over the district court proceedings.

Even the government acknowledged that the federal prosecution was being used as

a backstop to the murder convictions in the event the convictions should "fall

---

[3] In *Nicholson*, the Court explained that there are three points for consideration when deciding to remand the case to a different judge: "'(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected"; "(2) whether reassignment is advisable to preserve the appearance of justice"; and "(3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Id.* at 217 (quoting *United States v. Guglielmi*, 929 F.2d 1001, 1007 (4th Cir. 1991)); *see also United States v. Lentz*, 383 F.3d 191, 222 (4th Cir. 2004) (applying same standard).

through." (JA162).  The government also sought the equivalent of a "death sentence" for Murdaugh for these non-violent financial offenses.

Murdaugh's sentencing guideline range was 210 to 262 months, based upon an offense level of 34 and a Criminal History Category of IV. Murdaugh's criminal history points resulted from convictions that occurred after the fraudulent scheme was discovered.  According to the U.S. Sentencing Commission's JSIN database, from fiscal year 2018-2022 there were three other defendants whose guideline range for financial fraud was also based on a level 34 and criminal history category IV. The average length of imprisonment imposed for these similarly situated defendants was 168 months, and the median length was 210 months. (JA258). Also, during the sentencing hearing, Murdaugh's counsel identified the following sentences of high profile defendants convicted of fraud after a jury trial: (i) Sam Bankman-Fried sentenced to 25 years after being convicted of a $8 billion crypto currency fraud scam; (ii) Elizabeth Holmes, chairman and CEO of Theronos, sentenced to 11 years; and (iii) Jeffry Skilling, the CEO of Enron originally was sentenced to 24 years, and it was later reduced to 12 years.  (JA148).

The government asked the district court give Murdaugh a "death sentence" of 30 years in prison. The district court, however, added 10 years more, and imposed a sentence of 40 years, analogizing Murdaugh to Bernie Madoff. As explained above, there is no comparison.  Madoff received a sentence within the calculated guideline

range for his conduct. The district court imposed a sentence that was more than double the low end of Murdaugh's guideline sentence range and was more than double the sentences of other defendants with the same offense level and criminal history score.  The loss amount used to calculate Madoff's sentencing guideline range exceeded $13 billion, while Murdaugh's loss amount was approximately $10 million.

Murdaugh's sentence is harsher than any other handed down in South Carolina state or federal court. Murdaugh's sentence is twice as harsh as sentences imposed in federal courts in the United States since 2018 upon defendants with the same offense level and criminal history category as Murdaugh. Murdaugh received the "death sentence" the government sought. He will serve the remainder of his life in prison, without the possibility of parole. Murdaugh was not convicted of murder in federal court. Yet, he received a sentence which is more appropriate for a murder conviction, and which, by the government's' own admission, serves as a backstop to his state murder convictions should they fall through.

To ensure the finality of this admitted backstop, which as discussed above is in violation of the Eighth Amendment, the government requests this Court overlook precedent from this Circuit and dismiss an appeal of a clear violation of Murdaugh's constitution right.  This Court should reject such effort and deny the government's Motion.

## V.    CONCLUSION

A defendant does not waive his right to appeal a sentence "where the sentencing court violated a fundamental constitutional or statutory right that was firmly established at the time of sentencing." *United States v. Archie*, 771 F.3d 217, 223 (4th Cir. 2014). Here, Murdaugh's sentence violated a fundamental constitutional right that was firmly established at the time of sentencing. Murdaugh's sentence violates the Eighth Amendment because it is grossly disproportionate to the federal crimes for which he pled guilty. As a result, this Court should not dismiss Murdaugh's appeal. Instead, this Court should vacate his 40-year sentence of incarceration and remand the case to the district court for resentencing before a different judge, preferably one from outside the District of South Carolina.

Respectfully Submitted,

By:    *s/ James M. Griffin*
James M. Griffin, Esq., Fed. ID No. 1053
Margaret N. Fox, Esq., Fed. ID No. 10576
GRIFFIN HUMPHRIES, LLC
4408 Forest Drive
Suite 300 (29206)
P. O. Box 999
Columbia, South Carolina, 29202
(803) 744-0800
jgriffin@griffinhumphries.com
mfox@griffinhumphries.com

*Counsel for Appellant*

August 26, 2024
Columbia, South Carolina

## VI.   CERTIFICATE OF COMPLIANCE

1.    This document complies with type-volume limits because, excluding the parts

of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure

statement, table of contents, table of citations, statement regarding oral

argument, signature block, certificates of counsel, addendum, attachments):

this document contains <u>3,738</u> words.

2.    This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface

using <u>Microsoft Word</u> in <u>14-point Times New Roman</u>.

Respectfully Submitted,

By:    *s/ James M. Griffin*
James M. Griffin, Esq., Fed. ID No. 1053
Margaret N. Fox, Esq., Fed. ID No. 10576
GRIFFIN HUMPHRIES, LLC
4408 Forest Drive
Suite 300 (29206)
P. O. Box 999
Columbia, South Carolina, 29202
(803) 744-0800
jgriffin@griffinhumphries.com
mfox@griffinhumphries.com

*Counsel for Appellant*

August 26, 2024
Columbia, South Carolina